UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:14-cr-523-T-23TGW
 8:16-cv-1465-T-23TGW

PAMELA LANE
_____/

**O R D E R**

Lane moves under 28 U.S.C. § 2255 (Doc. 1) to vacate and challenges the validity of her conviction for conspiracy to distribute and for possession with the intent to distribute five hundred grams or more of methamphetamine, for which offenses she is imprisoned for eighty-seven months. Lane's motion lacks merit because in the plea agreement Lane waived the right to raise each ground she asserts in the motion to vacate.

Rule 4, Rules Governing Section 2255 Cases, requires a preliminary review of the motion to vacate. Section 2255 requires denial of the motion without a response if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (finding the summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief"); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978) ("Rule 4(b)

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

[Rules Governing § 2255 Proceedings], allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief . . . .'"). *See United States v. Deal*, 678 F.2d 1062, 1065 (11th Cir. 1982) (citing *Wright* and *Hart*).

## **FACTS**[2]

> From an unknown date, but at least late in 2013, through and on or about November 13, 2014, the defendants Linda Tallent, Pamela Lane, Joseph Lane, and others known and unknown, conspired and agreed to distribute and possess with intent to distribute 500 grams or more of methamphetamine in and around Hillsborough County, in the Middle District of Florida and elsewhere.
>
> More specifically, during the above time frame, Pamela and Joseph LANE, commercial truck drivers, had been transporting multiple pound quantities of methamphetamine on a monthly basis from Phoenix, AZ, to the Middle District of Florida. During that time, they had sold multiple ounce quantities of methamphetamine to Linda Tallent on numerous occasions. Linda Tallent had also received pound quantities from another source of supply ("SOS"). Tallent sold a large amount of that methamphetamine to an individual who later became a confidential informant (CI) with the DEA. The CI often went with Tallent to the SOS's residence to get the methamphetamine.
>
> On November 13, 2014, the CI agreed to cooperate with the DEA and made arrangements to purchase two ounces of methamphetamine from Tallent for $2600. The CI met with Tallent and gave her the $2600. Tallent told CI that she needed to go pick up the drugs from one of her SOS's in Gibsonton, Florida. Agents followed Tallent to the residence of Pamela and Joseph Lane at 8010 Nundy Avenue, Gibsonton, Florida, where she was observed going into the residence, meeting with the Lanes, and leaving. A traffic stop was conducted on her vehicle and she admitted there were two ounces of

---

[2] This summary of the facts derives from pages 16–17 in the plea agreement. (Doc. 67)

methamphetamine in her car. The drugs were located in the car and $600 of the pre-recorded funds were in her pocket. After waiving her *Miranda* rights, Tallent admitted that she had just purchased the drugs from her girlfriend on Nundy Ave, and she had seen additional money in that house before she left.

A search warrant was executed at the Lane's residence at 8010 Nundy Avenue, Gibsonton, Florida. Agents found approximately 114 grams of methamphetamine in the master bedroom; multiple small baggies commonly used to distribute methamphetamine; one loaded Charter Arms .357 Revolver, and 5 rounds of ammunition located in the dresser drawer next to the bed in the master bedroom; a Remington .870 express magnum pump shotgun and 5 rounds of ammunition and a Browning Bar .243 Rifle with 30 rounds of ammunition located in the closet of the master bedroom; one Savage Arms .12 gauge single shotgun model 94 (with a cut off butt stock) with several rounds of ammunition in second bedroom; and two safes containing $74,610.00 in United States Currency. Contained among the money was $1700.00 in pre-recorded "buy" money.

The motion to vacate asserts five grounds of ineffective assistance of counsel. (Doc. 1) Lane contends that counsel rendered ineffective assistance by challenging neither the search warrant nor the United States' evidence, ostensibly because counsel failed to conduct an independent investigation. Lane alleges that counsel was ineffective at sentencing by advising Lane that she would get a light sentence (Ground Three), by allowing the United States to confiscate her life savings (Ground Four), and by failing to present character witnesses at sentencing (paragraph number four in the supporting memorandum). In a supplement (Doc. 4) Lane alleges that counsel was ineffective for not seeking a minor role reduction.

## GROUNDS WAIVED BY GUILTY PLEA

Lane contends that counsel rendered ineffective assistance by challenging neither the search warrant nor the United States' evidence, ostensibly because

counsel failed to conduct an independent investigation (Grounds One and Two). By pleading guilty Lane waived her right to challenge both the search warrant and the United States' evidence. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea[3] waives a non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

This waiver of rights precludes most challenges to the conviction. "[W]hen the judgment of conviction upon a guilty plea has become final and the offender seeks to re-open the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States v. Broce*, 488 U.S. 563, 569 (1989). *See also United States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all non-jurisdictional defects in the proceedings.") and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). A guilty plea waives a claim based on a pre-plea event, including a claim of ineffective assistance of counsel. *Wilson*, 962 F.2d at 997. *See also McMann v. Richardson*, 397 U.S. 759, 766 (1970)

---

[3] A conviction based on a plea of *nolo contendere* is reviewed the same as a conviction based on a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982).

(holding that a plea waives the right to trial and, therefore, waives the "right to contest the admissibility of any evidence the State might have offered against the defendant").

Lane's allegation that counsel should have both challenged the search warrant (Ground One) and conducted an independent investigation (Ground Two) are refuted by her testimony when she pleaded guilty. In response to the magistrate judge's questions, Lane testified that "there [was not] anything [defense counsel] should have done that he did not do in this case" and that she was "satisfied with the way [defense counsel] represented [her] in this case." (Doc. 143 at 23) Lane's earlier testimony bars the present claims. "[T]he representations of the defendant . . . [at the plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). *Accord Marquez v. United States*, 2017 WL 1279044 (11th Cir. April 6, 2017) (quoting *Blackledge*); *Connolly v. United States*, 568 Fed. App'x 770, 771 (11th Cir. 2014) (quoting *Blackledge*). *See also United States v. Lagrone*, 727 F.2d 1037, 2038 (11th Cir. 1984) ("When a defendant pleads guilty relying upon his counsel's best professional judgment, he cannot later argue that his plea was due to coercion by counsel.").

As *Wilson* explains, the entry of a guilty plea waives a claim that occurred before entry of the plea, including both a substantive claim and a purported failing of counsel but neither a jurisdictional challenge nor a voluntariness challenge to the

plea. Lane asserts neither a jurisdictional challenge nor a voluntariness challenge. As a consequence, by pleading guilty Lane waived presenting the claims asserted in Grounds One and Two.

**GROUNDS PRECLUDED BY THE APPEAL WAIVER**

Lane's conviction is based on a negotiated plea. The plea agreement specifically states that Lane "expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines," except for three inapplicable exceptions. Plea Agreement ¶7 at 13 (Doc. 67).

During the entry of the guilty plea the magistrate judge ensured that Lane understood that she could not withdraw her plea even if the sentence imposed was greater than expected (Doc. 143 at 30):

> THE COURT: In paragraph seven, the Government agrees to recommend that you be sentenced within the guideline range as determined by the Court under the guidelines as adjusted by any departure the Government has agreed to recommend, but it goes on to say that for some reason the Court does not do that, you would not have a right to withdraw your plea of guilty. Mr. Lane, do you understand that?
>
> Mr. Lane: Yes, sir.
>
> THE COURT: And Ms. Lane, do you?
>
> THE DEFENDANT: Yes, Sir.
>
> THE COURT: I will tell you that in some circumstances the court can go above the sentencing guidelines and in other circumstances can go below the sentencing guidelines. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

Lane stated that she understood that this preclusion against withdrawing the guilty plea applies even if the district judge rejects the United States' recommendation for a downward adjustment based on Lane's acceptance of responsibility. (Doc. 143 at 31–32) The magistrate judge also ensured that Lane understood the significance of the appeal waiver (Doc. 143 at 34–35):

> THE COURT: I also want to emphasize paragraph seven. I will tell you that even though you are pleading guilty, you have a right to appeal your sentence. But under paragraph seven, you limit the extent to which you can appeal your sentence. Under paragraph seven, you can only appeal if the sentence exceeds the guideline range as determined by the Court under the guidelines, or if the sentence exceeds the statutory maximum penalty, or if the sentence violates the Eighth Amendment to the Constitution which prohibits excessive fines and cruel and unusual punishment. Those are the only three things about your sentence that you can appeal. And in particular, what you cannot appeal is the way the Court calculates the sentencing guidelines. Mr. Lane, do you understand that?
>
> MR. LANE: Yes, sir.
>
> THE COURT: And Ms. Lane, do you understand that provision?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you have any question about it?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And are you agreeing to it freely and voluntarily as part of this plea agreement?
>
> THE DEFENDANT: Yes, sir.

Lane's sentence to imprisonment for eighty-seven months is below the guidelines minimum of 135 months, which, as a consequence, is neither an upward departure nor above the statutorily authorized maximum sentence. Consequently,

the waiver of the right to challenge the advisory guidelines sentence controls, and the appeal waiver precludes a claim of ineffective assistance of counsel at sentencing, as *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir.), *cert. denied* 546 U.S. 902 (2005), explains:

> [A] valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing. [A] contrary result would permit a defendant to circumvent the terms of the sentence-appeal waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.

**Ground Three:**

Lane alleges that counsel was ineffective for misadvising her that she would get a light sentence (Ground Three). The appeal waiver precludes this claim. Moreover, at sentencing Lane testified that she had received no promises other than what is stated in the plea agreement (Doc. 143 at 35–38):

> THE COURT: Let me jump to paragraph 13, it begins at the bottom of page 17. And that indicates that this plea agreement is the entire agreement between you and the Government, and that there are no other promises, agreements or representations except for what's written down here. So if you think someone's promised you something in order to get you to plead guilty, if it isn't written down here, then it doesn't count, and you can't rely on it.
>
> . . . .
>
> And Ms. Lane, are you pleading guilty freely and voluntarily?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has anyone forced or coerced you in order to get you to plead guilty?

>THE DEFENDANT: No, sir.
>
>THE COURT: Except for what's set out in the plea agreement, has anyone promised you anything in order to get you to plead guilty?
>
>THE DEFENDANT: No, sir.
>
>. . . .
>
>THE COURT: And Mr. Michaels [defense counsel], as far as you know, have any promises been made to obtain a plea of guilty except for those set out in the plea agreement?
>
>[DEFENSE COUNSEL]: No, sir.
>
>THE COURT: And Ms. Peluso [prosecutor], as far as you know with respect to either Defendant, have any promises been made to obtain a plea of guilty except for those set out in the plea agreement?
>
>[PROSECUTOR]: There have not, Your Honor. Thank you.
>
>. . . .
>
>THE COURT: Ms. Lane, has anyone coached you or told you to testify other than the truth in answer to my questions today.
>
>THE DEFENDANT: No, sir.
>
>THE COURT: And have your answers been the truth?
>
>THE DEFENDANT: Yes, sir.

Lane's earlier testimony bars the present claim. *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity."). *Accord Marquez v. United States*, 2017 WL 1279044 (11th Cir. April 6, 2017) (quoting *Blackledge*); *Connolly v. United States*, 568 Fed. App'x 770, 771 (11th Cir. 2014) (quoting *Blackledge*).

Even if defense counsel had promised a "light sentence," an inaccurate sentencing prediction alone is usually not a sufficiently deficient performance to sustain a claim for ineffective assistance of counsel if the defendant knew the maximum possible sentence. *United States v. Himick*, 139 Fed. App'x 227, 228–29 (11th Cir. 2005) (brackets original), quoting *United States v. Bradley*, 905 F.2d 359, 360 (11th Cir. 1990), explains:

> [A] defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence: "To the extent that [a defendant] claimed his guilty plea was based on his attorney's estimate of the sentence and offense level, the claim did not warrant withdrawal of the guilty plea where [the defendant] acknowledged to the court that he understood the possible maximum sentence for his crime to be greater than the sentence the court ultimately imposed."

Ground Three is both precluded by the appeal waiver and meritless.

**Ground Four:**

Lane alleges that counsel was ineffective for allowing the United States to confiscate her life savings. Lane agreed to the forfeiture as part of the plea agreement (Doc. 67 at 6–7):

> The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 21 U.S.C. § 843, whether in the possession or control of the United States, the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following property seized from the residence located at 8008 Nundy Avenue, Gibsonton, Florida on November 13, 2014, [including] $74,610.00 in United States Currency, said property having been used in a manner or in part to commit and to facilitate the commission of the violations alleged in the Indictment.

> The defendant agrees and consents to the forfeiture of these
> assets pursuant to any federal criminal, civil judicial or
> administrative forfeiture action. The defendant also hereby
> agrees to waive all constitutional, statutory and procedural
> challenges in any manner (including direct appeal, habeas
> corpus, or any other means) to any forfeiture carried out in
> accordance with this Plea Agreement on any grounds,
> including that the forfeiture described herein constitutes an
> excessive fine, was not properly noticed in the charging
> instrument, addressed by the Court at the time of the guilty
> plea, announced at sentencing, or incorporated into the
> judgment.

Additionally, the magistrate judge ensured that, when she pleaded guilty, Lane understood the plea agreement's forfeiture provision (Doc. 143 at 26–27):

> In some cases, and this is one of them, the Court can order a
> Defendant to forfeit certain property, and in fact, there's a
> forfeiture provision in each of the plea agreements. It's on page
> six beginning in paragraph 11. And that indicates that what you
> each have agreed to forfeit are certain guns and ammunition,
> and in addition, you've agreed to forfeit $74,610. Mr. Lane, do
> you understand you've agreed to forfeit those assets?
>
> MR. LANE: Yes, sir.
>
> THE COURT: And Ms. Lane, do you?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Mr. Lane, do you have any question about the
> forfeiture?
>
> Mr. LANE: No, sir.
>
> THE COURT: Okay. Ms. Lane, do you?
>
> THE DEFENDANT: No, sir.

In the memorandum attached to the motion to vacate, Lane asserts an additional claim related to the forfeiture claim. In paragraph number four Lane alleges that counsel was ineffective at sentencing by not presenting character

witnesses who "would have shown the confiscated monies belonged to defendant that defendant just made a foolish mistake by following her husband in what he was doing." (Doc. 1, ¶4 at 11) As shown above Lane stipulated to the forfeiture in the plea agreement and admitted during the plea colloquy to understanding the terms of the forfeiture.

Ground Four is precluded by the appeal waiver and lacks merit.

**Ground Five:**

Lane supplemented her motion to vacate with a claim that counsel was ineffective for not moving for a "minor role reduction." (Doc. 4) This claim challenges the district court's calculation of the advisory sentence under the sentencing guidelines. As a consequence, the claim is barred by the appeal waiver, in which Lane "expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range . . . ." (Doc. 67 at 13)

Nevertheless, the claim lacks merit. Lane correctly represents that, based on the comments following Section 3B1.2, a "minimal participant" is entitled to a four-level reduction in the calculation of the proper Criminal Offense Level, a "minor participant" is entitled to a two-level reduction, and a defendant somewhere in between should get a three-level reduction. Lane asserts entitlement to a two-level reduction as a minor participant. (Doc. 4 at 3)

The district court calculated Lane's advisory guideline range as 135–168 months based on a Offense Level 33 and a Criminal History Category I. The United

States moved under Section 5K1.1 for a one level departure based on her substantial assistance. The granting of the Section 5K1.1 reduction allowed the district court to vary downward and, as a result, allowed Lane to avoid the statutory minimum of 120 months. The district court imposed an 87-month sentence, below the advisory guidelines for the following reasons (Doc. 129 at 3):

> The court varied downward to an imprisonment term of eighty-seven months to achieve a recognition that the defendant is less culpable than her husband and more culpable than the third defendant. The defendant's lengthy participation in this interstate trafficking scheme warrants a stern term of imprisonment, but she is a first offender with a confused and injurious personal history.

Starting with a Criminal Offense Level 33 and awarding her both a one-level reduction under Section 5K1.1 as requested by the United States and a two-level reduction as a "minor participant," which she now requests, Lane would have an adjusted Criminal Offense Level 30, which would produce an advisory range of 97–121 months. The effect of the district court's generosity was to award Lane a three-level reduction by imposing an 87-month sentence, which is at the low end of Criminal Offense Level 29. As a consequence, the sentence Lane serves is less than she would have received if she was afforded the two-level reduction she seeks as a "minor participant." Ground Five is precluded by the appeal waiver and lacks merit.

Accordingly, the motion under Section 2255 to vacate (Doc. 1) is **DENIED**. The clerk must enter a judgment against Lane, close this case, and enter a copy of this order in the criminal action.

# DENIAL OF BOTH A
# CERTIFICATE OF APPEALABILITY
# AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Lane is not entitled to a certificate of appealability ("COA"). A prisoner moving under Section 2255 has no absolute entitlement to appeal a district court's denial of his motion to vacate. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Lane must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because she fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Lane is entitled to neither a certificate of appealability nor an appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Lane must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 19, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE